IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                   No. CR 07-1012 BB

MICHAEL YOUNG,

        Defendant.

MEMORANDUM OPINION
AND
ORDER DENYING MOTION TO DISMISS

        THIS MATTER is before the Court on Defendant's *Motion to Dismiss Indictment Without Prejudice on the Basis that the Current United States Attorney has been Unconstitutionally Appointed* [doc. 60]. The Court having reviewed the briefs of counsel and additional authority, finds the *Motion* is without any legal justification, and it will be Denied.

I.        Facts

        David C. Iglesias, former United States Attorney for the District of New Mexico, resigned his position effective February 28, 2007. In the immediate wake of Mr. Iglesias's resignation, First Assistant United States Attorney Larry Gomez became Acting United States Attorney under the Vacancies Reform Act, 5 U.S.C. § 3345(a)(1). On September 26, 2007, Acting Attorney General Peter Keisler appointed Mr. Gomez as United States Attorney pursuant to 28 U.S.C. § 546(c)(2). This temporary appointment expired on January 25, 2008,

and this Court appointed Gregory J. Fouratt as United States Attorney pursuant to Section 546(d).

Even when the United States Attorney for the District of New Mexico was "acting" or "interim" and by whomever he was appointed, the scores of Assistant United States Attorneys in the office have continued to carry out their duties, including presenting cases to the grand jury. The indictment in this case was signed by Rumaldo R. Armijo, a career Assistant United States Attorney who was duly appointed by, and who ultimately is responsible to, the Attorney General of the United States. In the instant case, the indictment was returned on May 22, 2007, while Mr. Gomez was the United States Attorney appointed by the Acting Attorney General.

II.     Issue

Defendant Michael Young asks this Court to dismiss the indictment "on the basis that the prosecution is being pursued by a United States Attorney who has been unconstitutionally appointed." (Mot. Dismiss p. 1). He bases this on his assertion "that 28 U.S.C. § 546(d), on its face, and as applied in this case, violates the separation of powers and is patently unconstitutional." (Mot. Dismiss p. 4).

III.    Congress has the Constitutional Authority to Authorize Judges to Appoint an Interim United States Attorney

Defendant argues that "[s]ince there is not a constitutionally appointed United States Attorney whose authority flows from the Executive Branch of government, the continued prosecution of Mr. Young is constitutionally impermissible and this case must be dismissed

**without prejudice until a constitutionally valid United States Attorney is appointed." (Mot. Dismiss p. 2). Defendant's position is without either historical or legal precedent.**

### A.  Historically, Appointment of the United States Attorney was Not Exclusively an Executive Function

**At common law, prosecution of criminal cases was not exclusively, or even primarily, a prerogative of the executive.[1]  During the colonial period, several cross currents influenced the development of the office of the criminal prosecutor.  The English practice of private prosecution, with or without supervision by a corporate or royal official, intersected with the Dutch "*schout*" who would review citizen complaints and then make a court presentation, and the French "*procureur*."  By the time of the American Revolution, private prosecution had radically declined and had been replaced by a range of public officials.[2]  However, even then it was clear the prosecuting attorney shared allegiance to, and the duties of, both the courts and the executive.  "Some were county officials appointed by the courts; some were deputies of the Attorney General but were nominated by the county court and operating with little supervision; some were deputies of the Attorney General operating directly under his view."  Jacoby at 19.  The founders of the Republic recognized this close affiliation between the prosecutor and the judge.  Edward Livingston, for example, was appointed by President**

---

[1]  *State v. Moynahan*, 325 A.2d 199, 206-07 (Conn. 1973); JOAN E. JACOBY, THE AMERICAN PROSECUTOR: A SEARCH FOR IDENTITY 4 (Lexington Pub. 1980) ("Jacoby"); Wayne R. LaFave, et al., 1 CRIM. PROC. § 1.6 (3d. Ed.); Kenneth L. Wainstein, Comment, *Judicially Initiated Prosecution: A Means of Preventing Continuing Victimization in the Event of Prosecutorial Inaction*, 76 CAL. L. REV. 727, 751-52 (1988); Simon Lazarus, Jane E. Larson, *The Constitutionality of the Independent Counsel Statute*, 25 AM. CRIM. L. REV. 187, 196 (1987).

[2]  Stephanie A.J. Dangel, Note, *Is Prosecution a Core Executive Function? Morrison v. Olson and the Framers' Intent*, 99 YALE L.J. 1069, 1084 (1999); Gerard Chuck Rainville, *The District Attorney in America: An Evolution*, 40-DEC *Prosc.* 32, 35 (2006) ("Rainville"); Joan E. Jacoby, *The American Prosecutor in Historical Context*, 39-APR *Prosc.* 34, 37 (2005); W. Scott Van Alstyne, Jr., *The District Attorney - A Historical Puzzle*, 1952 Wisc. L. REV. 125.

**Jefferson as the United States Attorney for New York in 1801 and served in that role while simultaneously acting as a judge of the City Court of Common Pleas. Stephen L. Carter, Comment,** *The Independent Counsel Mess***, 102 HARV. L. REV. 105, 126 n. 78 (1988).**

**The ambiguity of the proper classification of the prosecuting attorney carried through the constitutional period. Only five of the original thirteen state constitutions even mention an attorney general and each of these places the office in the judicial, rather than the executive, article of the document. Jacoby at 22. In fact, in 1787 no state provided the executive officer unfettered control over the appointment and removal of prosecutors.** *Myers v. United States***, 272 U.S. 52, 69-70 (1926) (Brandeis dissenting). Indeed, at the time the Constitution was ratified, and for decades thereafter, several of the original states provided for the appointment of prosecutors by either the judiciary or legislature.[3] Although the Federal Judiciary Act of 1789 ultimately gave the appointment to the executive, it originally provided for the judicial appointment of United States Attorneys.[4]**

**It is not surprising, then, that the draftsmen of the Constitution did not perceive the three branches of government as completely separate and exercising exclusively delineated powers. James Madison, the principal architect of the system of divided governmental power, opined: "It was shown in the last paper that the political apothegm there examined does not require that the legislative, executive, and judiciary departments should be wholly**

---

[3]   *Cases of the Judges of the Court of Appeals*, 8 Va. 135, 1788 WL 56 (1788) (quoting Virginia constitutional provision for legislative appointment of the Attorney General); Jonathan L. Entin, *Separation of Powers, the Political Branches, and the Limits of Judicial Review*, 51 OHIO ST. L.J. 175, 204 (1990); Peter M. Shane, *Independent Policymaking and Presidential Power: A Constitutional Analysis*, 57 GEO. WASH. L. REV. 596, 603-05 (1989) ("Shane").

[4]   Shane at 603 (citing *In re Sealed Case*, 838 F.2d 476, 533 n. 41 (D.C. Cir.) (R. Ginsburg, J., dissenting), *rev'd sub nom., Morrison v. Olson*, 487 U.S. 654 (1988); Jacoby at 20-21.

unconnected with each other.  I shall undertake, in the next place, to show that unless these departments be so far connected and blended as to give to each a constitutional control over the others, the degree of separation which the maxim requires, as essential to a free government, can never in practice be duly maintained." THE FEDERALIST, NO. 48, p. 338 (J. Madison) (Bourne ed. 1901).  "The product was a constitution, not of separated powers, but of 'separated institutions sharing powers.'"  Joel Fleishman and Arthur Aufses, *Law and Orders: The Problem of Presidential Legislation*, 40 Law & Contemp. Prob. 1, 3 (1976).  It is therefore clear that "[i]n designing the structure of our Government and dividing and allocating the sovereign power among three co-equal branches, the Framers of the Constitution sought to provide a comprehensive system, but the separate powers were not intended to operate with absolute independence."  *United States v. Nixon*, 418 U.S. 683, 707 (1974).

In her treatise, THE AMERICAN PROSECUTOR: A SEARCH FOR IDENTITY, Joan E. Jacoby, the executive director of the Jefferson Institute for Justice Studies, concluded:

> We know that current descriptions of the prosecutor often refer to him as an executive officer with quasi-judicial functions.  This most likely is based on a twist of historical fact.  At the beginning of the nineteenth century in America, the district attorney was viewed as a minor figure in the court, an adjunct to the judge. His position was primarily judicial, and perhaps only quasi-executive ....  He was, in the eyes of the earliest Americans, clearly a minor figure in the court's structure.

Jacoby at 23; *see also* Rainville at 35.  The ambiguity about the proper role and classification of the prosecuting attorney reflected by the constitutional draftsmen has persisted to the

present day. Indeed, for virtually the entire period since the Civil War,[5] Congress, through statutes similar to 28 U.S.C. § 546, specifically authorized the judiciary to fill any interim vacancy in the office of the United States Attorney. *United States v. Sotomayor Vázquez*, 69 F. Supp. 2d 286, 295 (D.P.R. 1999); *United States v. Mitchell*, 136 Fed. 846, 906 (C.C. Or. 1905).

### B. The Courts have Resoundingly and Repeatedly Rejected Challenges to the Constitutionality of 28 U.S.C. § 546(c) and its Predecessors

Given this history, it is not surprising that the Supreme Court has repeatedly recognized that "the Constitution by no means contemplates total separation of each of these three essential branches of Government." *Buckley v. Valeo*, 424 U.S. 1, 121 (1976). "[T]he Framers did not require - and indeed rejected - the notion that the three Branches must be entirely separate and distinct." *Mistretta v. United States*, 488 U.S. 361, 380 (1989). Indeed, the Court itself has called "archaic" the view that the Constitution establishes "three airtight departments of government." *Nixon v. Administrator of Gen. Servs.*, 433 U.S. 425, 443 (1977); *see also Dreyer v. Illinois*, 187 U.S. 71, 83-84 (1902). "While the Constitution diffuses power the better to secure liberty, it also contemplates that practice will integrate the dispersed powers into a workable government. It enjoins upon its branches separateness but interdependence, autonomy but reciprocity." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635 (1952) (Jackson J., concurring). The proper question, then, is not whether the United States Attorney is a member of the executive or judicial branch. The issue is whether

---

[5] Apparently the only exception was during 2006-07 under the USA Patriot Improvement and Preauthorization Act of 2005, 120 Stat. 246, when Congress gave the appointment power exclusively to the Attorney General. In 2007, Congress reversed this anomaly and restored the judiciary's power to make interim appointments of United States Attorneys. 28 U.S.C. § 546(d).

the law being challenged is one that "prevents the Executive Branch from accomplishing its constitutionally assigned functions." *Nixon v. Administrator*, 433 U.S. at 443.

Congress has generally vested the appointment of United States Attorneys in the President of the United States, with the advice and consent of the Senate. 28 U.S.C. § 541(a). In the event a United States Attorney's position becomes vacant, however, an interim United States Attorney should be appointed.[6] Congress has divided the responsibility for making such interim appointments between the Attorney General and the district courts. Under 28 U.S.C. § 546, the Attorney General may appoint a United States Attorney for a district in which the office of the United States Attorney is vacant for 120 days. After that appointment expires, "the district court for such district may appoint a United States attorney to serve until the vacancy is filled." 28 U.S.C. § 546(d).

Only where the executive branch defaults, then, does the district court have the authority to appoint a prosecutor. However, nothing in Section 546(d) confers upon district judges any supervisory power over an interim United States Attorney after his appointment. Rather, this supervision plainly remains in the Executive Branch where it has resided for more than a century. *See United States v. Cowan*, 524 F.2d 504, 513 (5th Cir. 1975) ("The Executive remains the absolute judge of whether a prosecution should be initiated and the first and presumptively the best judge of whether a pending prosecution should be terminated."). Indeed, the Congress has directed that all litigation in which the United States is involved is under the direction of the Attorney General, 28 U.S.C. § 516, and that the Attorney General

---

[6] An example of the type of the unnecessary issue of the United States Attorney's legal authority that can arise when the district court fails to exercise its statutory authority is provided in *In re Grand Jury Proceedings*, 671 F. Supp. 5 (D. Mass. 1987).

"shall direct all United States attorneys, assistant United States attorneys, and special attorneys ...." 28 U.S.C. § 519; *United States v. Libby*, 429 F. Supp. 2d 27, 30 (D.D.C. 2006). And it goes without challenge that the power to remove a United States Attorney is vested exclusively in the President, who may exercise that power for any reason. 28 U.S.C. § 541(c); *see Parsons v. United States*, 167 U.S. 324, 343 (1897). Nothing in the plain language of Section 546(d) grants the district court any power to infringe upon the President's prerogative and remove an interim United States Attorney after he is appointed. *In re Farrow*, 3 F. 112, 116 (C.C.N.D. Ga. 1880) (predecessor statute authorizing judicial appointment of interim United States Attorney "was not to enable the circuit justice to oust the power of the president to appoint, but to authorize him to fill the vacancy until the president should act, and no longer"). Indeed, the specific language of 28 U.S.C. § 546(d) allows the judicially appointed United States Attorney to serve only "until a presidentially appointed United States Attorney is qualified."

While Defendant is therefore correct in noting Article II, § 1, cl. 1 of the Constitution vests the executive power in the President, both history and legal precedent refute the logic of his corollary that "28 U.S.C. § 546(d) eviscerates Executive Branch authority and action because a judicially accountable official has been trusted with faithfully executing the law." (Mot. Dism. p. 4). In the face of clear history and legal precedent to the contrary, Defendant builds his argument exclusively on Justice Scalia's "constitutionally clairvoyant" dissent in *Morrison v. Olson*, 487 U.S. at 710. (Mot. Dism. p. 2). This position suffers from several obvious infirmities. Initially, this Court is bound to follow the applicable precedent of the Supreme Court. *United States v. Hatter*, 532 U.S. 557, 567 (2001); *Payne v. Tennessee*, 501 U.S.

**808, 827 (1991). A dissent is, of course, not precedent and it would be perilous to rely on a single dissent by one Justice to depart from the authority of the majority.** *African Trade & Information Ctr., Inc. v. Abromaitis*, **294 F.3d 355, 362 (2d Cir. 2002);** *United States v. Goodrich*, **871 F.2d 1011, 1013 (11th Cir. 1989).**

**Even if Justice Scalia's dissent in** *Morrison* **could be considered "constitutionally clairvoyant," however, "Cassandra-like predictions in dissent are not a sure guide to the breadth of the majority's ruling."** *Lee v. Kemna*, **534 U.S. 362, 386 (2002) (quoting** *United States v. Travers*, **514 F.2d 1171, 1174 (2d Cir. 1974) (Friendly J.). The majority in** *Morrison*, **with only Justice Scalia dissenting, clearly sustained the judicial appointment of the independent counsel against a challenge virtually identical to that at bar. In that case, a special division of judges was authorized by Congress to appoint an independent counsel to investigate malfeasance of high level government officials under the Ethics and Government Reform Act. Even though the judges retained the right to oversee several aspects of the independent counsel,[7] the Court found no violation of the separation of powers principle. Speaking for the Court, Chief Justice Rehnquist noted:**

> **[W]e also note that federal courts and judges have long performed a variety of functions that, like the functions involved here, do not necessarily or directly involve adversarial proceedings within a trial or appellate court. For example, federal courts have traditionally supervised grand juries and assisted in their "investigative function" by, if necessary, compelling the testimony of witnesses. Federal courts also participate in the issuance of search warrants, and review applications for wiretaps, both of which may require a court to consider the nature and scope of criminal investigations on the basis of evidence or affidavits**

---

[7] The special division exercised far more influence over the independent counsel than the district court does over the United States Attorney herein. However, like the Ethics in Government Act, nothing in 28 U.S.C. § 546(d) gives this Court "the power to 'supervise' the independent counsel in the exercise of his or her investigative or prosecutorial authority." 487 U.S. at 681.

>**submitted in an *ex parte* proceeding. In *Young v. United States ex rel. Vuitton et Fils S.A.*, we recognized that federal courts possess inherent authority to initiate contempt proceedings for disobedience to their orders, and this authority necessarily includes the ability to appoint a private attorney to prosecute the contempt.**

**487 U.S. at 681 n. 20 (internal citations omitted).**

The *Morrison* Court also specifically rejected Defendant Young's argument that it would be "incongruous" for judges to appoint a prosecutor. The District of Columbia Circuit had invalidated the judicial appointment of the independent counsel on this theory. *In re Sealed Case*, 838 F.2d at 494. In reversing the Circuit, Chief Justice Rehnquist, pointed out that "[l]ower courts have also upheld interim judicial appointments of United States Attorneys, ... and Congress itself has vested the power to make these interim appointments in the district courts." *Morrison*, 487 U.S. at 676 (internal citations omitted). *See also Ex parte Siebold*, 100 U.S. 371, 398 (1880) (Incongruity is a bar only when the appointment of the officers in question could not "with any greater propriety, and certainly not with equal regard to convenience, have been assigned to any other depositary of official power capable of exercising it."); *United States v. Hilario*, 218 F.3d 19, 27 (1st Cir. 2000) (rejecting defendant's incongruity challenge to the judicial appointment of the United States Attorney as "difficult, if not impossible, to distinguish [from] *Morrison*"). Since incongruity is based on the principle that no other branch of government could "with greater propriety" conveniently appoint the United States Attorney, the long historical involvement of the judiciary in the appointment of this office makes Defendant's argument somewhat ludicrous.

Defendant's reliance on Justice Scalia's *Morrison* dissent also ignores the fact that nine years later he authored the majority opinion in *Edmond v. United States*, 520 U.S. 651 (1997).

**In that case the Court found no transgression of separation theory when the Secretary of Transportation, as a member of the Executive Branch, appointed judges to the Coast Guard Court of Criminal Appeals. Justice Scalia pointed to the express language of the Appointments Clause, U.S. Const. art. II, § 2, cl. 2, noting it provided Congress the authority to vest by law "the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." He then tracked the Court's historic interpretation of that language and concluded:**

> **Most recently, in *Morrison v. Olson*, ... we held that the independent counsel created by provisions of the Ethics in Government Act of 1978, 28 U.S.C. §§ 591-599, was an inferior officer. In reaching that conclusion, we relied on several factors: that the independent counsel was subject to removal by a higher officer (the Attorney General), that she performed only limited duties, that her jurisdiction was narrow, and that her tenure was limited.**
>
> **Petitioners are quite correct that the last two of these conclusions do not hold with regard to the office of military judge at issue here. It is not "limited in tenure," as that phrase was used in *Morrison* to describe "appoint[ment] essentially to accomplish a single task [at the end of which] the office is terminated." ... Nor are military judges "limited in jurisdiction," as used in *Morrison* to refer to the fact that an independent counsel may investigate and prosecute only those individuals, and for only those crimes, that are within the scope of jurisdiction granted by the special three judge appointing panel. ...**
>
> **We do not dispute that military appellate judges are charged with exercising significant authority on behalf of the United States. This, however, is also true of offices that we have held were "inferior" within the meaning of the Appointments Clause. *See, e.g., Freytag v. Commissioner*, 501 U.S. at 881-882 (special trial judges having "significan[t] ... duties and discretion" are inferior officers). The exercise of "significant authority pursuant to the laws of the United States" marks, not the line between principal and inferior officer for Appointments Clause purposes, but rather, as we said in *Buckley*, the line between officer and nonofficer.**

**520 U.S. at 661-62 (internal citations omitted).**

11

**The Court's holdings in *Morrison* and *Edmond* are the seminal authorities which have led numerous courts to specifically find United States Attorneys are "inferior officers" and that they may therefore be appointed by either the Attorney General or the courts when authorized by Congress to do so.   *See also Myers v. United States*, 272 U.S. 52, 159 (1926) (citing *Parsons v. United States*, 167 U.S. 324, 337 (1897), as a case which "conclusively establishes" that the United States Attorney is an "inferior officer" for purposes of appoint clause analysis).  Courts throughout the nation have therefore recognized the authority of Congress to designate such appointing authority.[8]**

**In *United States v. Solomon*, 216 F. Supp. 835 (S.D.N.Y. 1963), a case cited by the *Morrison* Court, a defendant challenged the legal validity of his criminal information.  *See* 216 F. Supp. at 836.  That information was signed by an Acting United States Attorney who was appointed by the district judges of the Southern District of New York pursuant to the congressional authorization then contained in Section 506 of Title 28, United States Code.  *Id.* The language of the statute then extant provided that "[t]he district court for a district in which the office of United States attorney is vacant, may appoint a United States attorney to serve until the vacancy is filled."  28 U.S.C. § 506.  As here, the defendant claimed his criminal information was invalid because the appointment of the United States Attorney by the district court judges violated the constitutional structure separating the powers of government.  In finding no constitutional violation, the *Solomon* court relied on facts equally applicable here:**

---

[8]   *See, e.g., United States v. Suescun*, 237 F.3d 1284 (11th Cir. 2001); *United States v. Tafoya*, No. 07CR697 MCA (D.N.M. Mem. Op., Feb. 15, 2008); *United States v. Baldwin*, No. 07CR2240 JB (D.N.M. Mem. Op., Feb. 26, 2008); *United States v. Dehghani*, 2007 WL 1796219 (W.D. Mo. June 20, 2007); *United States v. Cardarella*, 2007 WL 1545849, at *4 (W.D. Mo. May 29, 2007); *cf. Commonwealth of the Northern Mariana Islands v. Yi Xiou Zhen*, 2002 WL 32983879, at *8-10 (N. Mar. Is. Feb. 26, 2002) (rejecting defendant's contention that her conviction was invalid because it was commenced by an Acting Attorney General who had not been confirmed by the Senate).

the "temporary nature" of the judiciary's power to appoint, and the fact that "the exercise of the appointive power by the judiciary in no wise binds the executive" and therefore "the executive branch is free to choose another United States Attorney at any time...." *United States v. Solomon*, 216 F. Supp. at 842.

Multiple judicial opinions specifically upholding the constitutional validity of a judicial appointment under 28 U.S.C. § 546(d) resulted from the 1993 appointment of a United States Attorney for Puerto Rico. The Court of Appeals for the First Circuit explained the factual setting in *United States v. Hilario, supra*:

> [W]hen the United States Attorney for the District of Puerto Rico resigned in May of 1993, Attorney General Janet Reno appointed an Assistant United States Attorney, Charles Fitzwilliams, to fill the resulting vacancy. Because the President failed to name a replacement within 120 days, Fitzwilliams's appointment lapsed and the position once again became vacant. ... On September 9, 1993, the judges of the United States District Court for the District of Puerto Rico responded to the exigency and appointed a career Justice Department lawyer, Guillermo Gil, as interim United States Attorney. ... Although more than six years have passed, the President has yet to nominate a United States Attorney. Thus, Gil continues to serve in an interim capacity.

218 F.3d at 21 (internal citations omitted). Criminal defendants, like Mr. Young, began to challenge prosecutions on the ground that a court appointed United States Attorney was a violation of the separation of powers. These challenges, using the very arguments advanced by Defendant Young, were repeatedly rejected.[9] This scenario has now repeated itself in New

---

[9] *Id.; United States v. Torres-Rosa*, 209 F.3d 4, 6 (1st Cir. 2000); *United States v. Colon-Muñoz*, 192 F.3d 210, 216 (1st Cir. 1999); *United States v. Ruiz Rijo*, 87 F. Supp. 2d 69, 70-72 (D.P.R. 2000), *aff'd sub nom.*, *United States v. Valdez-Santana*, 279 F.3d 143, 147 (1st Cir. 2002); *United States v. Santana*, 83 F. Supp. 2d 224, 230-32 (D.P.R. 1999); *United States v. Sosa*, 78 F. Supp. 2d 20, 21 (D.P.R. 1999); *United States v. Kouri-Perez*, 47 F. Supp. 2d 164, 166 (D.P.R. 1999); *United States v. Sotomayor Vázquez*, 69 F. Supp. 2d at 296.

**Mexico and the same motion as that advanced herein has been uniformly denied by several judges in this District.**[10]

**In *United States v. Gantt*, 194 F.3d 987 (9th Cir. 1999), the defendant argued that a certification under 18 U.S.C. § 3731 was invalid because the United States Attorney for the Southern District of California had been appointed by the district court pursuant to 28 U.S.C. § 546(d). Following *Morrison*, the Ninth Circuit held that such a judicial appointment does not violate the Appointments Clause, because United States Attorneys are "inferior officers." 194 F.3d at 999. The Ninth Circuit again reached the same decision in *United States v. Whitehead*, 200 F.3d 634, 641 (9th Cir. 2000), rejecting the defendant's argument that the district court lacked jurisdiction over his case because the United States Attorney was appointed by the district judges.**

**IV.     Dismissal of the Indictment is Not an Available Remedy**

**Assuming Defendant had any legal support for his arguments, Defendant offers no explanation as to why his indictment, filed during the tenure of a duly appointed United States Attorney, should be dismissed even if the appointment of a subsequent United States Attorney were to be found defective. Nor has Defendant described any cognizable legal injury. The indictment Defendant challenges is duly signed by the Foreperson of the Grand Jury as well as by Rumaldo Armijo, a career Assistant United States Attorney acting under and on behalf of Larry Gomez, United States Attorney. Defendant's arguments regarding separation and**

---

[10]     *United States v. Tafoya, supra*; *United States v. Baldwin, supra*; *United States v. Rose*, — F. Supp. 2d —, 2008 WL 586332 (D.N.M).

incongruity are totally inapplicable with regard to Mr. Gomez who was acting under an appointment by the United States Attorney General at the time the indictment was returned.

As a matter of law, then, the constitutionality of an appointment under Section 546(d) would have no bearing upon the validity of Defendant's indictment. However, even if Mr. Fouratt's appointment was invalid, "[a]n appointment of a United States Attorney that is not made as provided by the Appointments Clause does not affect the Government's power to prosecute." *United States v. Suescun*, 237 F.3d at 1287. "The constitutionality of § 546(d) would not affect the validity of indictments ... as indictments need only be signed by an 'attorney for the government.'" *United States v. Gantt*, 194 F.3d at 998; *see also United States v. Kouri-Perez*, 47 F. Supp. 2d at 166; FED. R. CRIM. P. 1(b)(1)(b) and 7(c)(1). Therefore, even if the subsequent appointment of Mr. Fouratt could be declared legally infirm, this Court could not dismiss the indictment on that basis.[11] Indeed, Defendant has provided no meaningful discussion as to why Defendant should be entitled to any remedy at all.

## O R D E R

As the foregoing makes clear, Defendant has no standing to challenge the constitutionality of 28 U.S.C. § 546 based on the Court's interim appointment of a United States Attorney for this District. If he was entitled to some legal remedy, however, the legal

---

[11] *United States v. Suescun*, 237 F.3d at 1281; *Gantt, supra*; *United States v. Tafoya,, supra; United States v. Baldwin, supra; United States v. Rose, supra; United States v. Cardarella supra; United States v. Ruiz Rijo*, 87 F. Supp. 2d at 71 (assuming that an appointment of an interim United States Attorney was unconstitutional, "Defendant's remedy would not be the dismissal of his indictment, for the appointment does not affect Defendant's basic constitutional rights"), *aff'd sub nom.*, *United States v. Valdez-Santana*, 279 F.3d 143, 147 (1st Cir. 2002); *United States v. Baker*, 504 F. Supp. 2d 402, 406 (E.D. Ark. 2007).

arguments he advances lack any historical or legal foundation.  The Court must, therefore, reject Defendant's contentions *in toto*.

Defendant's *Motion to Dismiss Indictment Without Prejudice on the Basis that the Current United States Attorney has been Unconstitutionally Appointed* is therefore DENIED.

SO ORDERED this 4th day of April, 2008.

                                            **BRUCE D. BLACK**
                                            **United States District Judge**